# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | CASE NO. 5:17-cr-00290 |
| ) | 5:21-cv-01515 |
| v. ) | |
| ) | JUDGE DAN AARON POLSTER |
| **CHRISTOPHER RAY DAMRON,** ) | |
| ) | |
| Defendant. ) | **OPINION AND ORDER** |
| ) | |

Before the Court is Petitioner Christopher Ray Damron's *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (the "Motion"). ECF Doc. 86. For the following reasons, Damron's Motion is **DENIED**.

## I. BACKGROUND

### A. Damron's Offense

On March 22, 2017, Damron was arrested on a community control violation for failing to apprise the Adult Parole Authority ("APA") of a change in address. ECF Doc. 79, Trial Tr. at 91-94.[1] Damron had previously informed the APA that he was residing in Uhrichsville, Ohio with the parents of his girlfriend, Aquinda Hill, but when an APA supervising officer visited Damron's registered address in mid-March 2017, Ms. Hill's parents informed the supervising officer that Damron has been residing with Ms. Hill since December 2016. *Id.* at 133-34; *see also* ECF Doc. 35, Suppression Tr. at 31-34, 54. Damron's assigned APA officer, Brian Shurtz, then searched for

---

[1] In 2016, Damron pleaded guilty in state court for not complying with an order or signal of a police officer, and the trial court sentenced him to three years' community control under the supervision of the APA. Damron was apprised that he was required to report any change of address to the APA as a condition of his supervision. ECF Doc. 35, Suppression Tr. at 57.

Damron on Ohio's electronic sex offender registration and notification ("eSORN") database because Damron is a registered sex offender, and Officer Shurtz discovered that Damron had reported to one county that he was residing with Ms. Hill but failed to apprise the APA of the address change. ECF Doc. 35, Suppression Tr. at 70-71. After learning this information from his supervising officer and eSORN, Officer Shurtz went to Ms. Hill's home with three other APA officers on March 22, 2021, to determine if Damron was residing there. ECF Doc. 79, Trial Tr. at 91-94. Upon arrival at Ms. Hill's home, Officer Shurtz located Damron in Ms. Hill's kitchen and immediately conducted a warrantless arrest of Damron for the community control violation. *Id.*

Officer Shurtz and the other APA officers then conducted a warrantless search of Ms. Hill's home and located a firearm on top of an entertainment unit. *Id.* at 92, 94-95, 97. Ms. Hill had informed the officers that Damron kept some belongings in the entertainment unit where the firearm was located. *Id.* at 97. During this search, Damron was detained and handcuffed in an APA van. *Id.* at 151.

After the firearm was discovered, Officer Shurtz questioned Damron, who was still in custody.[2] Damron first informed Officer Shurtz that the firearm belonged to his brother and later said that Ms. Hill wanted the firearm in the house for protection. *Id.* at 102, 113.[3]

**B.      Procedural History**

On July 26, 2017, Damron was indicted on a single charge of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). ECF Doc. 1 at 1-2. The indictment alleged that Damron had previously been convicted of two felonies—rape and attempted crime

---

[2] The APA officer testified that Damron was provided with *Miranda* warnings in advance of the interview (Trial Tr. at 101), and Damron does not make any argument to the contrary in the instant Motion.

[3] In a subsequent written statement, Ms. Hill denied that the firearm belonged to her, and she testified to the same during trial. *See* Trial Tr. at 141-42.

victim intimidation—in Ohio state court, making his alleged possession of "a firearm and ammunition" unlawful. *Id.* The indictment did not charge Damron with knowing that he was prohibited from possessing a firearm due to his prior convictions. *Id.*

Following arraignment on August 17, 2017, Damron's counsel investigated the charge against Damron. ECF Doc. 8. For instance, on September 11, 2017, Damron's counsel applied for and received appointment of a defense investigator to locate and interview potential witnesses. ECF Docs. 16, 17. Damron's counsel likewise sought *Brady* material, *Giglio* evidence, and any relevant camera footage or recordings. ECF Docs. 12, 13, 26.

Damron's counsel also filed a suppression motion, which this Court granted on December 1, 2017, but which the Sixth Circuit later reversed on the Government's interlocutory appeal. ECF Docs. 31, 34, 46. In seeking suppression, Damron's counsel argued that the firearm should be suppressed because the APA officers did not obtain consent before the warrantless search of Ms. Hill's home and, thus, the search was unlawful. ECF Doc. 21 at 6-9. Damron's counsel further argued that Damron's post-arrest statements to Officer Shurtz should have been suppressed because Damron did not knowingly waive his *Miranda* rights. *Id.* at 9-10.

After the Sixth Circuit reversed the suppression ruling, the case proceeded to a one-day jury trial on April 4, 2019, and Damron was found guilty on the same day. ECF Doc. 59. During the trial, Damron's counsel cross-examined Officer Shurtz about his lack of contemporaneous notes from the post-arrest interview with Damron. ECF Doc. 79, Trial Tr. at 111-13. During Ms. Hill's cross-examination, Damron's counsel elicited testimony about others who may have brought the firearm into Ms. Hill's house, such as Ms. Hill's former boyfriends or her former babysitter, Tiffany Clay *Id.* at 127-29, 136-37. At the end of the Government's case-in-chief, Damron's counsel moved for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal

Procedure and argued that the Government had presented insufficient evidence for the elements of the crime charged, but the Court denied that motion. *Id.* at 153-55. Ultimately, the jury found Damron guilty of being a felon in possession of a firearm after a short deliberation. *Id.* at 197-99.

On August 21, 2019, the Court sentenced Damron to a 100-month incarceration term and a three-year period of supervised released. ECF Doc. 67. During the sentencing hearing, Damron complained to the Court that his counsel had not called Ms. Clay—*i.e.*, Ms. Hill's former babysitter—to testify, even though Ms. Clay claimed to be the true owner of the firearm. ECF Doc. 83, Sentencing Tr. at 5-6. One week prior to the sentencing hearing, Ms. Clay mailed to Damron a purported affidavit in which she asserted her ownership over the firearm and explained how it ended up at Ms. Hill's home. *Id.* at 6-8. Damron's counsel explained that he previously interviewed Ms. Clay and doubted a jury would find her credible. *Id.* at 8. Moreover, when Damron's counsel later attempted to contact Ms. Clay, both counsel and the court-authorized investigator were unable to locate her. *Id.* at 8-9. The Court informed Damron that he could not bring up new evidence during sentencing, since the jury had already found him guilty of the crime charged. *Id.* at 6.

Damron appealed his final conviction to the Sixth Circuit, and Damron's trial counsel also represented him on appeal. ECF Doc. 72. On appeal, Damron's counsel argued that the Government failed to meet its burden of proving that Damron constructively possessed the firearm that was recovered from the top of Ms. Hill's entertainment unit. ECF Doc. 84 at 2. On July 17, 2020, however, the Sixth Circuit affirmed the conviction, holding that the Government presented sufficient circumstantial evidence to support the conviction. *Id.* at 3-4.

    **C.**    **The Instant Motion**

On June 4, 2021, Damron filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on the grounds that his counsel was ineffective during trial, during

the Government's interlocutory appeal of this Court's suppression ruling, and during the direct appeal of Damron's conviction. ECF Doc. 86. The Government opposes the motion and filed its response brief on August 25, 2021. ECF Doc. 88. More than a month has passed since the Government filed its response brief, and Damron has not filed a reply.

**II.    DISCUSSION**

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a district court may move the court that imposed the sentence to vacate the sentence on the grounds that it was "imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack[.]" *Id.* To obtain relief under Section 2255, a prisoner must demonstrate a constitutional error, a sentence that exceeds statutory limits, or an error of fact or law "so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

When a Section 2255 motion is based on purported ineffective assistance of counsel, the petitioner's claims are analyzed under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). Thus, the petitioner must establish two elements: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficiency, the outcome of the proceedings would have been different. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 694). Under the first prong, there must be evidence that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687). As to the second "prejudice" prong, the Supreme Court has stated that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Griffin*, 330 F.3d at 736.

To succeed on a claim of ineffective assistance of counsel, the defendant must establish counsel's constitutionally defective performance by a preponderance of the evidence. *Packett v. United States*, 738 F. App'x 348, 352 (6th Cir. 2018) (citing *Pough*, 442 F.3d at 964). Still, a review of counsel's performance must be highly deferential and requires the courts to "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). Conclusory allegations that fail to articulate specifically what was deficient about the counsel's actions or how they prejudiced the case are insufficient to sustain a claim of ineffective assistance of counsel on a Section 2255 motion. *United States v. Howell*, Case No. 1:19-CR-242, 2020 WL 4287409, *3 (N.D. Ohio July 27, 2020).

Here, Damron identifies six grounds on which his counsel was constitutionally defective. Accordingly, the Court applies the foregoing *Strickland* standard to each of Damron's claims of ineffective assistance in turn.

    **A.**    **Failure to Challenge Damron's Warrantless Arrest and Failure to Have Evidence Suppressed (Grounds One and Two)**

Damron's first two ineffective assistance of counsel claims are related to counsel's attempts to have the evidence against Damron suppressed. Namely, Damron argues that counsel provided ineffective representation by failing to: (1) obtain suppression of the seized firearm evidence as fruit of the unlawful and warrantless search of Ms. Hill's home (ECF Doc. 86 at 13-14); (2) argue that his warrantless arrest was not supported probable cause that existed before the arrest and, in turn, argue for suppression of Damron's statements to Officer Shurtz (*id.* at 4-10, 13); or (3) move for a rehearing or otherwise object to the Sixth Circuit's conclusion that the probation officer's search of Ms. Hill's home was supported by probable cause (*id.* at 10-13).

None of Damron's three suppression arguments provide any basis to conclude that his counsel provided him constitutionally defective representation. Rather, the record confirms that Damron's counsel made appropriate strategic choices in attempting to have evidence suppressed.

As an initial matter, Damron's argument regarding the warrantless search of Ms. Hill's home can be rejected out of hand because Damron's counsel did, in fact, move this Court to suppress the firearm on these grounds. ECF Doc. 21. Indeed, Damron's counsel successfully convinced the Court that the firearm should be suppressed because Ms. Hill did not consent to a full search of her home, although the Sixth Circuit disagreed with the Court's legal analysis. ECF Docs. 31, 34, 46. It is well settled that a cogent, yet unsuccessful argument does not equate to ineffective assistance of counsel. *Bankston v. United States*, No. 1:13-cr-166, 2019 WL 3859397, *5 (N.D. Ohio Aug. 5, 2019) (citing *Wiley v. Sowders*, 647 F.2d 642, 648 (6th Cir. 1981) ("Counsel is required to be competent, but not necessarily victorious.")). Thus, Damron's first suppression argument fails to articulate how his counsel's performance fell below an objectively reasonable standard, such that he does not meet the first *Strickland* prong.

Damron's second argument about his warrantless arrest is likewise unsuccessful in identifying a constitutional error because Damron's counsel cannot be faulted for deciding not to file a futile suppression motion. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (determining that the failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel); *see also United State v. Thomas*, 38 F. App'x 198, 202 (6th Cir. 2002) (same). Indeed, the APA officers possessed reasonable cause to believe that Damron had violated a condition of his community control by failing to register a change of address before moving in with Ms. Hill—not only did Ms. Hill's own parents report the address change to the APA, but the eSORN database also revealed that Damron himself listed Ms. Hill's

address as his residence with one Ohio county.[4] As such, Section 2951.08 of the Ohio Revised Code authorized Officer Shurtz to arrest Damron without a warrant for the community control violation, which would have rendered any suppression motion futile. Again, Damron's argument does not satisfy to the first *Strickland* prong.

Finally, Damron's argument about his counsel's appellate performance during the interlocutory appeal is similarly unavailing because, again, the Court will not fault counsel for declining to file a futile motion for a rehearing. *See Hanley*, 906 F.2d at 1121; *Thomas*, 38 F. App'x at 202. Damron claims that his counsel should have moved for a rehearing before the Sixth Circuit because that court relied on a ground not asserted by the parties when it reversed this Court's suppression ruling—*i.e.*, the Sixth Circuit ruled that the warrantless search of Ms. Hill's home was supported by probable cause, but the Government only ever argued that the warrantless search was appropriate because Ms. Hill consented to the search. ECF Doc. 86 at 10-13. However, in the portion of the appellate decision highlighted by Damron, the Sixth Circuit was explaining that Ms. Hill's constitutional right to be free from unconstitutional searches was distinct from Damron's right, which is a correct statement of law. *See United States v. Damron*, No. 18-3129, 2018 WL 7253960, *4 (6th Cir. Sept. 10, 2018) (citing *United States v. Payne*, 588 F. App'x 427, 431 (6th Cir. 2014)). Accordingly, Damron has not specified a basis on which his counsel should have moved for reconsideration of the Sixth Circuit's ruling and, thus, counsel was not ineffective for deciding not to make such a motion.

---

[4] In his motion papers, Damron repeatedly claims that warrantless arrest was improper because the APA officers searched Ms. Hill's house to confirm that he was residing there—*i.e.*, the officers needed to search Ms. Hill's home to provide a post-hoc rationalization for Damron's warrantless arrest. ECF Doc. 86 at 4-10. However, Damron's argument ignores that the APA officers had articulable probable cause prior to searching Ms. Hill's home, given that both Ms. Hills' parents and Damron's own eSORN reporting indicated that Damron had violated his community control terms by changing his address.

Therefore, overall, Damron cannot meet the first *Strickland* prong because his counsel provided reasonably competent representations with respect to the suppression issues. Accordingly, Grounds One and Two provide no basis for setting aside Damron's sentence.

B.     **Failure to Challenge the Sufficiency of the Indictment (Ground Three)**

Damron also faults his counsel for failing to argue on appeal that the indictment did not properly charge Damron with the elements of 18 U.S.C. §§ 922(g) and 924(a)(2). ECF Doc. 86 at 16. While Damron does not specifically identify the indictment's error, he does cite to *Rehaif v. United States*, in which the Supreme Court ruled Section 924(a)(2)'s knowledge element required the Government to prove *both* that the defendant knowingly possessed a firearm *and* that the defendant knew that he belonged to the statutory class of persons who are prohibited from such possession. ECF Doc. 86 at 16 (citing *Rehaif v. United States*, 139 S. Ct. 2191, 2196-97 (2019)). Damron, thus, concludes that his appellate representation was constitutionally defective because counsel did not identify this structural error during the direct appeal of his conviction, despite the possibility of automatic reversal. ECF Doc. 86 at 16.

As a preliminary matter, Damron is correct that his indictment was infected with a *Rehaif* error.[5] More specifically, the indictment did not charge Damron with knowing that he belonged to a class of persons who were forbade from possessing firearms and, thus, did "not directly and unambiguously set forth the elements of the crime that the government must prove." ECF Doc. 1 at 1; *see also United States v. Conley*, 802 F. App'x 919, 923 (6th Cir. 2020).

---

[5] The Government states that the indictment was proper under the law as it existed at the time of Damron's conviction—*i.e.*, before the *Rehaif* was decided. ECF Doc. 88 at 7. The Court clarifies that *Rehaif* still applies here because the well-settled rule is that "[c]ases decided after a trial but before sentencing apply on direct review." *See Unites States v. Garrison*, 839 F. App'x 968, 982 (6th Cir. 2020) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328, (1987)). Thus, *Rehaif* applies here because the Supreme Court issued the *Rehaif* decision on June 21, 2019, which was before Damron was sentenced on August 21, 2019.

However, the decision by Damron's counsel to omit the *Rehaif* error on direct appeal does not constitute a constitutional deprivation. As this Court has recently explained, an indictment is sufficient when it provides the accused with sufficient information to prepare a defense, and failure to challenge a *Rehaif* error does not result in ineffective assistance of counsel when the defendant is able to prepare a defense to the knowledge elements. *Howell*, 2020 WL 428740 at *3. As in *Howell*, the record demonstrates that Damron was able to prepare his defense, particularly considering that Damron stipulated to his prior felony convictions so that the Government would not need to elicit testimony about Damron's rape conviction in front of the jury to establish the prior felony conviction element. *See* ECF Doc. 58 at 1; *see also Howell*, 2020 WL 428740 at *3; *accord Conley*, 802 F. App'x at 923-24 ("[S]tipulation to his prior felony conviction also satisfied the purpose of requiring an indictment to contain all elements of the crime charged.").

Again, Damron's counsel was not ineffective because neither *Strickland* prong is met. Damron's counsel cannot be characterized as making an objectively unreasonable error, given that counsel could not have credibly argued on direct appeal that Damron was deprived of notice of the knowledge element when the record demonstrates that Damron was aware of his prohibited status. Furthermore, there is no basis to conclude that Damron was prejudiced by his counsel's decision not to raise the *Rehaif* error on appeal because the indictment would have been deemed sufficient under *Conley*. Accordingly, Damron is not entitled to the relief he seeks on Ground Three because neither *Strickland* prong is met.

### C. Failure to Subpoena Key Witnesses for Trial (Ground Four)

Damron next complains that his counsel was ineffective for failing to subpoena key witnesses for the trial. ECF Doc. 86 at 17. While Damron's petition does not specifically identify which witnesses counsel failed to subpoena, Damron does attach correspondence exhibits relating

to two potential witnesses. *Id.*; *see also* ECF Docs. 86-1, 86-2. The first is Ms. Clay's letter, which Damron received shortly before sentencing in this matter. Doc. 86-1 at 1-2; ECF Doc. 83, Sentencing Tr. at 5-6. The second letter is from Damron's counsel, who recounted a conversation in which Damron informed counsel that he did not want to push his friend and potential witness, Mr. Shawn Pongrantz, to testify even though counsel had subpoenaed Mr. Pongrantz. ECF Doc. 86-2 at 1. Damron claims that the absence of Ms. Clay and Mr. Pongrantz deprived of Damron of his right to present a defense. ECF Doc. 86 at 17.

Under *Strickland*, counsel's decisions about what witnesses to call will be considered matters of trial strategy that should not be second-guessed upon an assertion of ineffective assistance of counsel. *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)). Instead, to find a constitutional deprivation, there must be evidence that counsel completely neglected to investigate the claims or to interview potential witnesses. *Id.* This rule flows from the general proposition that the Constitution does not guarantee a criminal defendant the best or most perfect defense, but rather provides for reasonably competent representation. *Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009); *see also Scott v. Mitchell*, 209 F.3d 854, 881 (6th Cir. 2000) ("[T]he Constitution guarantees competent counsel and a fair trial, not perfection.").

Here, the record demonstrates that Damron's perceived errors can be fairly characterized as trial strategy, given that Damron has not identified any basis to conclude that his counsel negligently failed to investigate the claims or to interview witnesses. Thus, Damron again does not satisfy the first *Strickland* prong.

With respect to Ms. Clay, Damron's counsel exhibited a reasonable trial strategy in deciding not to call her as a witness. Most notably, Damron's counsel stated that he interviewed

Ms. Clay and determined that the jury would likely not find her credible (ECF Doc. 83, Sentencing Tr. at 8), and the Court will not second-guess counsel's assessment of a potential witness. Despite the possible problems with Ms. Clay's testimony, Damron's counsel still tried to interview her again but neither counsel nor the investigator could locate her, and this evidences that Damron's counsel was diligent in following up with witnesses. *Id.* at 5-8. Likewise, Ms. Clay did not send not making use of the letter during the trial. In sum, the Court discerns no error in the strategy that Damron's counsel implemented for Ms. Clay.

With respect to Mr. Pongrantz, Damron's own records demonstrate that it was Damron who decided that Mr. Pongrantz did not need to appear to testify, despite being subpoenaed by Damron. ECF Doc. 86-2 at 1. Thus, it was Damron—not his counsel—who was responsible for the decision not to call Mr. Pongrantz as a witness. Indeed, Damron's Exhibit 2 further establishes that counsel subpoenaed Mr. Pongrantz, interviewed him, and then phoned Damron to discuss the details of the interview. *Id.* All of these actions again evidence that Damron's counsel engaged in appropriate investigation.

The Court also reviews Damron's errors in the context of counsel's entire performance before and during trial, which establishes that he provided Damron with component counsel. For instance, Damron's counsel requested the *Brady* material, the *Giglio* evidence, and the relevant APA recordings, all of which indicates that Damron's counsel investigated and reviewed the Government's evidence against Damron. *See* ECF Docs. 12, 13, 14. Damron's counsel also requested a court-authorized investigator to locate Ms. Clay, which is the hallmark of investigating the charges against a client. *See* ECF Doc. 16, 17. Similarly, Damron's counsel executed a reasonably trial strategy, which included using Officer Shurtz's lack of contemporaneous notes as impeachment evidence and eliciting testimony from Ms. Hill about who else may have brought

the firearm into her home. ECF Doc. 79, Trial Tr. at 111-13, 127-29, 136-37. Given the totality of counsel's representation, Damron's claim that he was denied the right to bring a defense is unsupported by the record.

Therefore, Damron's counsel was not ineffective in preparing for the trial, and Damron does not satisfy the first *Strickland* prong. Accordingly, Ground Four also does not entitle Damron to the relief he seeks.

### D. Failure to Seek Dismissal of the Indictment or a Motion for Judgment of Acquittal Based on the Lack of Ammunition Evidence (Ground Five)

Damron's next ineffective assistance of counsel arguments arise from the Government's lack of evidence that Damron possessed ammunition. ECF Doc. 86 at 22-23. First, Damron argues that his attorney should have sought dismissal of the indictment because the indictment charged Damron with possession of both a firearm and ammunition, but the Government's trial evidence established possession of the firearm only. *Id.* at 22. Second, Damron asserts that the jury was instructed that the Government was required to prove Damron possessed both a firearm and ammunition, that the Government failed to carry its burden, and that Damron's counsel should have filed a motion for a judgment of acquittal. *Id.* at 22-23. According to Damron, these errors influenced the severity of his sentence because the Court improperly considered ammunition when imposing the sentence. *Id.* at 23.

Neither of Damron's identified failures are errors at all, and there is again no basis to conclude that counsel made mistake of constitutional magnitude. As such, Damron has again failed to meet the first *Strickland* prong with respect to Ground Five.

As to Damron's argument about the indictment, counsel's decision not to seek dismissal of the indictment based on the lack of ammunition evidence was reasonable and supported by law. As the Government correctly points out, an indictment may charge elements in the conjunctive,

but the petit jury is permitted to convict the defendant on any theory in the indictment. *United States v. Carson*, 796 F. App'x 238, 241 (6th Cir. 2019). The fact that the Government did not need to prove that Damron possessed ammunition does not render the indictment defective, and Damron's counsel had no basis to lodge a challenge to the indictment.

Next, Damron's argument regarding the jury instructions likewise fails to identify a constitutional error by counsel because the trial transcript clearly reflects that the Court instructed the jury that the Government had the burden to prove that Damron possessed only the firearm specified in the indictment. ECF Doc. 79, Trial Tr., p. 167. As such, there was no error to which Damron's counsel should have objected, and, in turn, there is no basis to find counsel ineffective.

Finally, Damron's argument about the lack of ammunition evidence influencing his sentence is also belied by the record. The Court did not consider ammunition when calculating Damron's sentence, and the sentencing transcript confirms that the Court never mentioned ammunition throughout the entire sentencing proceeding. *See generally* ECF Doc. 67. Damron's attempt to create prejudice to him in his sentencing is thus misplaced.

Therefore, Damron's counsel had no obligation to challenge the Government's lack of ammunition because it would have had no bearing on the outcome. Ground Five also does not entitle Damron to vactur of his sentence because he has, again, not demonstrated that his counsel was ineffective under *Strickland*.

### E. Failure to Object to the Probation Officer Witness (Ground Six)

Damron's final claim of ineffective assistance of counsel is based on his attorney's failure to object to the Government calling Officer Shurtz as a trial witness. ECF Doc. 86 at 25. More specifically, Damron maintains that Officer Shurtz's appearance was prejudicial because the jury learned that Damron was on community control. *Id.*

However, as discussed above, Damron's counsel cannot be considered ineffective simply for failing to make futile motions. *Hanley*, 906 F.2d at 1121; *Thomas*, 38 F. App'x at 202. Any motion to preclude Officer Shurtz from testifying at trial would have been futile because the Government is entitled to call fact witnesses to support its case, and, here, Officer Shurtz was a key fact witness to the circumstances surrounding Damron's arrest and the discovery of the gun. Likewise, Damron's argument that he was prejudiced when the jury learned that he was on community control is faulty because the jury was already aware that Damron had a felony conviction given that he was charged with being a felon in possession of a weapon. *See United States v. Griffin*, 476 F. App'x 592, 598 (6th Cir. 2011) ("Where the government is required to prove as an element of the offense that the defendant has previously committed a felony, as in a felon-in-possession prosecution, the potential for prejudice from the jury hearing evidence of parole status is substantially lessened." (internal alterations omitted)). As such, Damron has not provided any grounds upon which Damron's counsel could have successfully objected to Officer Shurtz being called as a witness, and Ground Six does not provide a reason to set aside his sentence.

## III.    CONCLUSION

All of Damron's claims of ineffective assistance of counsel fail in their own rights, and, as a result, the instant Motion is not well taken. Damron's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, ECF Doc. 86, is **DENIED**.

**IT IS SO ORDERED**.

> */s/ Dan Aaron Polster September 30, 2021*
> **Dan Aaron Polster**
> **United States District Judge**